United States Courts
Southern District of Texas
FILED

NOV 2 3 2010

David J. Bradley, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| INDIAN HARBOR INSURANCE COMPANY | § | H 10-4681 CA No. |
| | § | |
| VS. | § | |
| | § | |
| SATTERFIELD & PONTIKES CONSTRUCTION, INC., and GILLETTE AIR CONDITIONING, INC. | § | |

**Complaint for Declaratory Judgment**

To the Honorable U.S. District Court:

Plaintiff Indian Harbor Insurance Company ("Indian Harbor") files this complaint for declaratory judgment pursuant to 28 U.S.C. §§ 2201–02 against Satterfield & Pontikes Construction, Inc. ("S&P"), and Gillette Air Conditioning, Inc. ("Gillette"), Defendants, and would respectfully show as follows:

## PARTIES

1. Indian Harbor Insurance Company is a corporation authorized to do business in the State of Texas that is incorporated in the State of North Dakota and has its principal place of business in the State of Connecticut.

2. Satterfield & Pontikes Construction, Inc., is a Texas corporation duly licensed to do business in the State of Texas, with its principal place of business in Houston, Texas. It may be served with citation by serving its registered agent for service CT Corporation System, 350 N. St. Paul St., Suite 2900, Dallas, Texas 75201.

3. Gillette Air Conditioning, Inc., is a Texas corporation licensed to do business in the State of Texas, with its principal place of business in San Antonio, Texas. It may be served with citation by serving its registered agent for service Vincent A. Gillette, 1215 San Francisco, San Antonio, Texas 78201.

## JURISDICTION AND VENUE

4. Jurisdiction in this Court is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332. The matter in controversy exceeds $75,000.00 exclusive of interest and costs.

5. Pursuant to 28 U.S.C. § 1391(a), venue is proper in the Southern District of Texas because S&P resides in the Southern District of Texas and both Defendants reside in the State of Texas, because all or a substantial part of the events or omissions giving rise to this suit occurred here, and because the insurance policy at issue was issued to S&P here.

## NATURE OF CASE

6. This is an action for declaratory relief brought pursuant to 28 U.S.C. §§ 2201–02 for the purpose of determining the rights, obligations, and duties arising under the policy of insurance issued by Indian Harbor to S&P.

## THE UNDERLYING LAWSUIT

7. In the underlying suit, Gillette sued S&P in Civil Action No. 10-778, styled *The United States of America for the Use and Benefit of Gillette Air Conditioning Company, Inc. vs. Satterfield and Pontikes Construction, Inc., and Continental Casualty Company,*

filed in the United States District Court for the Western District of Texas, San Antonio Division.

8. In its original complaint, Gillette alleged that S&P entered into a written contract with the United States of America for renovations to a training barracks, Building 2791, at Fort Sam Houston (federal project/contract number W9126G-07-C-0060). Gillette and S&P entered into a subcontract agreement under which Gillette performed the HVAC and plumbing work. Gillette alleges that it performed extra work at the special direction of S&P. Gillette further alleges that it properly performed all the work yet S&P still owes it $346,846.69. Gillette pleaded a federal claim under the Miller Act and two pendent state claims for quantum meruit and breach of contract.

9. S&P sent Gillette's complaint to Indian Harbor and demanded a defense and indemnity. Indian Harbor denied S&P a defense on Gillette's original complaint.

10. Less than three weeks after filing its original complaint, Gillette filed a first amended complaint adding a negligence claim against S&P. In that count, Gillette alleges that the plans and specifications provided by S&P were negligently prepared because they contain substantial errors and defects. Gillette further alleges that it was harmed as a result of the errors and defects and that it sustained damages of $346,846.69. S&P had not answered the lawsuit when Gillette filed its first amended complaint. On information and belief, Gillette had given S&P an extension of time to answer the lawsuit.

11. S&P tendered the first amended complaint to Indian Harbor and demanded a defense and indemnity. Indian Harbor has agreed to defend S&P under a full reservation of rights.

## THE INSURANCE POLICY AND GROUNDS FOR RELIEF

12. Indian Harbor issued S&P a professional and contractor's pollution legal liability policy, Policy No. PEC0029923. A true and correct copy of that policy is attached hereto as Exhibit A.

13. The policy provides that Indian Harbor will pay on behalf of S&P for "professional loss" that S&P becomes legally obligated to pay because of a "claim" resulting from an act, error, or omission in "professional services" as those terms are defined in the policy.

**Section I. Insuring Agreements**

**A. Coverage A — Professional Liability:**

**1. PROFESSIONAL LOSS**

The Company will pay on behalf of the INSURED for PROFESSIONAL LOSS which the INSURED becomes legally obligated to pay because of a CLAIM resulting from an act, error or omission in PROFESSIONAL SERVICES, provided that:

. . .

c. The CLAIM is first made against the INSURED during the POLICY PERIOD and reported to the Company, in writing, during the POLICY PERIOD or, where applicable, the EXTENDED REPORTING PERIOD.

. . .

**Section II. Definitions**

. . .

**B.** **CLAIM** means a monetary demand or notice, or assertion of a legal right alleging liability or responsibility on the part of any INSURED and includes a lawsuit, petition, or governmental or regulatory action commenced against any INSURED.

. . .

W. **PROFESSIONAL LOSS** means:

1. a monetary judgment, award or settlement of compensatory damages.

. . .

PROFESSIONAL LOSS does not include: (i) injunctive or equitable relief; (ii) the return of fees or charges for services rendered; (iii) costs and expenses incurred by the INSURED to redo, change, supplement or fix the INSURED's work or services including redesign; or (iv) any of the INSURED's overhead, mark-up or profit.

X. **PROFESSIONAL SERVICES** means those activities listed in Item (5) of the declarations that are rendered by or on behalf of the NAMED INSURED.

. . .

**(5) PROFESSIONAL SERVICES:** PROFESSIONAL SERVICES rendered in the performance of pre-construction services; value engineering; field changes to design; design; and Construction Management when Satterfield & Pontikes Construction, Inc. is retained to perform such services pursuant to a Construction Management or Design Build Contract.

14. Gillette's first amended complaint does not allege a claim for professional loss, which does not include costs and expenses incurred by S&P to re-do, change, supplement, or fix S&P's work or services including redesign; therefore, Indian Harbor does not owe S&P a duty to defend. Further, the underlying facts will show that the special work performed by Gillette was for the purpose of re-doing, changing, supplementing, or fixing S&P's work or services including redesign so that, therefore, Indian Harbor does not owe S&P and Gillette a duty to indemnify or pay.

15. Under the policy, a "claim" must result from an act, error, or omission in "professional services," as defined in the policy. A failure to pay Gillette money allegedly

owed it does not result from an act, error, or omission in professional services. Therefore, Indian Harbor does not owe S&P a duty to defend and does not owe S&P and Gillette a duty to indemnify or pay.

16. The policy has an exclusion for contractual liability arising from S&P's assumption of liability in a contract or agreement, or breach of contract or agreement.

**Section IV. Exclusions**

This Policy does not apply to any CLAIM, PROFESSIONAL LOSS, MITIGATION EXPENSES, POLLUTION CONDITION, POLLUTION LOSS or EMERGENCY REMEDIATION EXPENSE:

. . .

**B. Contractual Liability**
arising from the INSURED's:

1. assumption of liability in a contract or agreement; or

2. breach of contract or agreement.

This exclusion does not apply to: (i) liability that the INSURED would have in the absence of the contract or agreement; or (ii) solely with regard to Coverage B.1. JOB SITE, as set forth in Section I. Insuring Agreements, liability assumed by the NAMED INSURED in a contract or agreement that is an INSURED CONTRACT.

. . .

17. The factual allegations in Gillette's first amended complaint show that, factually, all claims arise from an assumption of liability in a contract or agreement or from a breach of contract or agreement and, therefore, that Indian Harbor does not owe S&P a defense. The factual allegations in Gillette's first amended complaint also show that the origin of Gillette's alleged damages arise from S&P's assumption of liability in a contract

or agreement, or from breach of contract or agreement, and that, therefore, Indian Harbor does not owe S&P a defense.

18. Further, the underlying facts show that Gillette did extra work at the specific request of S&P because the ceilings in the basement were too low to accomplish the HVAC work as originally forecast by S&P. S&P instructed Gillette to proceed with the additional work but the Army has denied S&P payment for the extra work. Based on the actual facts in the underlying case, S&P's alleged liability to Gillette arises from S&P's assumption of liability in a contract or agreement or from S&P's breach of contract or agreement. Because the contractual liability exclusion excludes coverage, Indian Harbor does not owe S&P and Gillette a duty to indemnify or pay.

19. The policy excludes coverage for "professional services" associated with design performed by S&P. Gillette's first amended complaint alleges that it was harmed as a result of design performed by S&P and, therefore, Indian Harbor does not owe S&P a duty to defend. If the underlying facts show that the claim arises out of professional services associated with design performed by S&P, Indian Harbor does not owe S&P and Gillette a duty to indemnify or pay.

20. The policy includes a requirement that a claim be first made against S&P during the policy period. The policy also excludes coverage for claims or professional losses known by a "responsible insured" before inception of the policy period, and for circumstances or conditions known by a "responsible insured" before inception of the policy period where the responsible insured should have reasonably foreseen that a claim or professional loss would result, and for incidents reported to a prior insurer:

**Section IV. Exclusions**

This Policy does not apply to any CLAIM, PROFESSIONAL LOSS, MITIGATION EXPENSES, POLLUTION CONDITION, POLLUTION LOSS or EMERGENCY REMEDIATION EXPENSE:

. . .

**N. Known Circumstances or Conditions**
arising from:

1. a CLAIM, PROFESSIONAL LOSS, MITIGATION EXPENSE, POLLUTION LOSS or EMERGENCY REMEDIATION EXPENSE, known by a RESPONSIBLE INSURED prior to the inception of the POLICY PERIOD; or

. . .

3. a circumstance or condition known by a RESPONSIBLE INSURED prior to the inception of the POLICY PERIOD where the RESPONSIBLE INSURED should have reasonably foreseen that a CLAIM, PROFESSIONAL LOSS or POLLUTION LOSS would result, or MITIGATION EXPENSE or EMERGENCY REMEDIATION EXPENSE would be incurred.

**P. Notices to Previous Insurers**
arising from any CLAIM, act, error or omission in PROFESSIONAL SERVICES, POLLUTION CONDITION or other circumstance reported by an INSURED under any prior policy issued by a person or organization other than the Company or any entity affiliated with the Company.

. . .

21. The inception date of the policy is December 31, 2009. The extra work had been performed, and the Army had denied payment for the extra work, by mid-October 2009. Indian Harbor does not owe S&P a duty to defend and does not owe S&P and Gillette a duty to indemnify or pay because Gillette first made a claim before inception of the policy, or because a responsible insured knew about a claim or professional loss before

inception of the policy, or because a responsible insured knew of a circumstance or condition before inception of the policy and should have reasonably foreseen that a claim or professional loss would result, or because the fortuity doctrine bars the claim for coverage. S&P may also have reported the incident to a prior insurer.

22. Gillette has made a claim against S&P for attorney's fees. The attorney's fees do not fall within the definition of "professional loss" resulting from an act, error, or omission in "professional services" and are not covered under the policy.

23. S&P has a $50,000.00 self-insured retention ("SIR"). The SIR applies to "legal expense" and to indemnity payments. Therefore, S&P owes the first $50,000.00 in defense expenses.

24. The policy requires that S&P cooperate and participate in defending the case brought by Gillette. S&P's non-cooperation with Indian Harbor, and possible cooperation with Gillette, the opposing party, would void coverage under the policy and, therefore, Indian Harbor would not owe a duty to defend S&P or to indemnify or pay S&P and Gillette.

## CONCLUSION AND PRAYER

25. Indian Harbor seeks a declaration that it owes no duty to defend S&P and owes no duty to indemnify S&P and Gillette. Indian Harbor also seeks its attorney's fees.

For these reasons, Indian Harbor Insurance Company asks that the Court:

a. enter judgment declaring that Indian Harbor has no duty to defend Satterfield & Pontikes Construction, Inc., in Civil Action No. 10-778, styled *The United States of America for the Use and Benefit of Gillette Air Conditioning Company, Inc. vs. Satterfield and Pontikes Construction, Inc., and Continental Casualty Company*, filed in the United States District Court for the Western District of Texas, San Antonio Division, or in any other suit brought against S&P arising from the subcontract between S&P and Gillette or from the incident alleged in the underlying lawsuit;

b. enter judgment declaring that Indian Harbor has no duty to indemnify S&P in Civil Action No. 10-778, styled *The United States of America for the Use and Benefit of Gillette Air Conditioning Company, Inc. vs. Satterfield and Pontikes Construction, Inc., and Continental Casualty Company*, filed in the United States District Court for the Western District of Texas, San Antonio Division, or in any other suit brought against S&P arising from the subcontract between S&P and Gillette or from the incident alleged in the underlying lawsuit;

c. enter judgment declaring that Indian Harbor has no duty to pay Gillette on any judgment in favor of Gillette and against S&P in Civil Action No. 10-778, styled *The United States of America for the Use and Benefit of Gillette Air Conditioning Company, Inc. vs. Satterfield and Pontikes Construction, Inc., and Continental Casualty Company*, filed in the United States District Court for the Western District of Texas, San Antonio Division, or in any other suit brought against S&P arising from the subcontract between S&P and Gillette or from the incident alleged in the underlying lawsuit;

d. enter judgment declaring that Indian Harbor has no duty to pay Gillette on any settlement reached by S&P and Gillette in Civil Action No. 10-778, styled *The United States of America for the Use and Benefit of Gillette Air Conditioning Company, Inc. vs. Satterfield and Pontikes Construction, Inc., and Continental Casualty Company*, filed in the United States District Court for the Western District of Texas, San Antonio Division, or in any other suit brought against S&P arising from the subcontract between S&P and Gillette or from the incident alleged in the underlying lawsuit;

e. grant Indian Harbor its costs, expenses, and reasonable attorney's fees; and

f. grant Indian Harbor any other relief to which it is entitled.

Respectfully submitted,

John B. Wallace
TBA No. 20769750
Southern District ID No. 2393
BARKER LYMAN, P.C.
3600 One Houston Center
1221 McKinney Street
Houston, Texas 77010-2009
Fax — 713-652-2419
Phone — 713-759-1990

Attorney for Plaintiff
Indian Harbor Insurance Company