# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| INDIAN HARBOR INSURANCE COMPANY, § § | | |
| Plaintiff, § § | | |
| v. § | CIVIL ACTION NO. H-10-4681 | |
| § | | |
| SATTERFIELD & PONTIKES CONSTRUCTION, INC., *et al.*, § § | | |
| Defendants. § | | |

## MEMORANDUM AND ORDER

This insurance coverage dispute is before the Court on the Motion for Summary Judgment ("Motion") [Doc. # 14] filed by Plaintiff Indian Harbor Insurance Company ("Indian Harbor") regarding whether it owes its insured, Defendant Satterfield & Pontikes Construction, Inc. ("S&P"), a duty to defend and indemnify in an underlying lawsuit and arbitration proceeding filed against S&P by Defendant Gillette Air Conditioning Company, Inc. ("Gillette"). S&P filed a Response [Doc. # 17], and Indian Harbor filed a Reply [Doc. # 18]. Gillette did not participate in the summary judgment briefing, but has filed a Stipulation [Doc. # 10] agreeing to be bound by any judgment of this Court. Having reviewed the full record and applicable legal

authorities, the Court concludes that Indian Harbor owes S&P a duty to defend. Therefore, the Court **denies** Indian Harbor's Motion.

## I.     BACKGROUND

S&P entered into a contract with the United States to renovate an Army training barracks.  S&P entered into a subcontract for Gillette to perform air conditioning and plumbing work on the project.  Gillette alleges that it, at S&P's request, performed additional work necessitated by S&P's insufficient plans and specifications.  Gillette alleges that S&P refused to pay for the additional work.

Gillette filed a lawsuit against S&P in the United States District Court for the Western District of Texas.  S&P moved to stay the lawsuit and to compel arbitration. The Western District court granted S&P's motion and required the parties to submit the dispute to arbitration.  In accordance with that ruling, Gillette filed an Arbitration Complaint.  In the Arbitration Complaint, the live pleading for purposes of the underlying dispute, Gillette asserts a cause of action for breach of contract and an alternative cause of action for *quantum meruit*.  Because the primary contract is between S&P and the United States government, Gillette also asserts a cause of action under the Miller Act to recover under S&P's surety bond required by 40 U.S.C. § 3131.  The Arbitration remains pending.

S&P is the insured under a professional and contractor's pollution legal liability policy, Policy No. PEC0029923 (the "Policy") issued by Indian Harbor. S&P made a claim under the Policy for Indian Harbor to provide it with a defense and indemnity in connection with the lawsuit filed against it by Gillette. Indian Harbor is providing a defense to S&P under a reservation of rights.

Indian Harbor filed this declaratory judgment action seeking a declaration that it does not owe a duty to defend or a duty to indemnify S&P in connection with the Arbitration with Gillette. Indian Harbor has moved for summary judgment and the Motion is ripe for decision.

## II.   APPLICABLE LEGAL STANDARDS

### A.   Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any

affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

### B. <u>Duty to Defend</u>

An insurer owes its insured a duty to defend "if a plaintiff's factual allegations potentially support a covered claim." *Zurich Amer. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490 (Tex. 2008) (citing *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church,* 197 S.W.3d 305, 310 (Tex. 2006)). Whether the insurer owes a duty to defend is a question of law for the Court to decide. *Ooida Risk Retention Group, Inc. v. Williams*, 579 F.3d 469, 471-72 (5th Cir. 2009). When faced with a coverage dispute, the Court must give effect to the intention of the parties as that intention is expressed in the insurance policy itself. *See Ideal Lease Serv., Inc. v. Amoco Prod. Co.*, 662 S.W.2d 951, 953 (Tex. 1983).

In deciding whether an insurer has a duty to defend, the Court must follow the "eight-corners rule" that provides that the duty to defend is determined by considering only the plaintiff's pleadings in the underlying lawsuit and the policy language. *Zurich*, 268 S.W.3d at 491. The focus is on the factual allegations in the underlying complaint, not on the legal theories. *See id.* at 495 (citing *Farmers Tex. County Mut.*

*Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997)). The Court is required to "resolve all doubts regarding the duty to defend in favor of the duty" and to "construe the pleadings liberally." *Id.* at 491. "If a complaint potentially includes a covered claim, the insurer must defend the entire suit." *Id.*

The insured bears the burden of showing that the claim against it is potentially within the policy's affirmative grant of coverage. *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 553 (5th Cir. 2004); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996). If the insurer relies on the policy's exclusions to deny coverage, the burden shifts to the insurer to prove the exclusion applies. *Primrose,* 382 F.3d at 553; *New Hampshire Ins. Co. v. Martech USA, Inc.*, 993 F.2d 1195, 1199 (5th Cir. 1993). If the insurer is successful, the burden shifts back to the insured to show that an exception to the exclusion brings the claim potentially within the scope of coverage under the insurance policy. *Id.*

### III. ANALYSIS

#### A. Duty to Defend

##### 1. Coverage

The Policy provides coverage for a "Professional Loss which the Insured becomes legally obligated by pay because of a Claim resulting from an act, error or omission in Professional Services . . .." *See* Policy, Exh. 1 to Response, § 1(A)(1).

Indian Harbor argues that the Policy does not provide coverage for Gillette's claims in the Arbitration because there is no "Professional Loss" and because Gillette's claims do not result from "an act, error or omission in professional services."

***Professional Loss*. –** The Policy defines "Professional Loss" to include "a monetary judgment, award or settlement of compensatory damages." *See id.*, § 1(W)(1). It is clear that S&P will suffer a "Professional Loss" if Gillette prevails in the Arbitration and receives a monetary judgment or award against S&P.

The Policy further provides that "Professional Loss does not include . . . costs and expenses incurred by the Insured to redo, change, supplement or fix the Insured's work or services, including redesign." *See id.*, § 1(W). There are no allegations or claims in the Arbitration that S&P (the Insured) incurred costs or expenses "to redo, change, supplement or fix the Insured's work or services." Instead, Gillette alleges and bases its claims for relief on the allegation that S&P provided deficient plans and specifications which caused Gillette – not S&P – to incur additional costs and expenses.

***Error or Omission in Professional Services*. –** The factual allegations in the Arbitration establish that Gillette's claims result, in part, from an error or omission in professional services by S&P. Gillette alleges that it performed additional work because S&P provided "insufficient plans and specifications" and furnished "defective

plans and specifications." *See* Arbitration Complaint, ¶¶ 11-12. Indian Harbor argues that Gillette's claim is based on S&P's failure to pay for extra work, not that S&P provided defective or inadequate plans and specifications. Gillette's claim, however, is factually based on S&P's failure to provide adequate plans, which resulted in Gillette performing additional work for which it was not paid. It is clear that Gillette alleges that its damages result, at least in part, from S&P's error or omission regarding the allegedly defective or inadequate plans and specifications for the project.

If Gillette prevails in the Arbitration, S&P will become legally obligated to pay a "Professional Loss" because of Gillette's claim that it suffered damages resulting from S&P's error or omission in Professional Services, specifically that S&P provided allegedly defective or inadequate plans and specifications. As a result, S&P has established that there is coverage for the claims in the Arbitration, at least to the extent that there is a duty to defend S&P.

### 2. Breach of Contract Exclusion and Exception

The Policy excludes coverage for "Contractual Liability arising from the Insured's breach of contract or agreement." *See* Policy, § IV(B)(2). Gillette's breach of contract claim would clearly fall within this exclusion.

The Policy further provides, however, that the exclusion "does not apply to liability that the Insured would have in the absence of the contract or agreement." *See*

*id.*, § IV(B). In this case, Gillette asserts an alternative claim for *quantum meruit*, pursuant to which liability could be imposed on S&P in the absence of a contract. As a result, the *quantum meruit* claim falls within the exception to the exclusion. Because the Arbitration Complaint includes a *quantum meruit* claim that is potentially covered by the Policy, the insurer has a duty to defend the entire suit.

### B. Duty to Indemnify

Generally, Texas law considers the duty-to-indemnify question to be justiciable only after the underlying suit is concluded, unless "the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Farmers Tex. County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 84 (Tex. 1997); *see also Willbros RPI, Inc. v. Continental Cas. Co.*, 601 F.3d 306, 313 (5th Cir. 2010). The underlying Arbitration proceeding remains pending and, as a result, it is undecided whether any recovery by Gillette will be based on its breach of contract claim (which would fall within the exclusion) or on its *quantum meruit* claim (which would fall within the exception to the exclusion). As a result, the duty to indemnify issue is not yet justiciable and this case will be stayed until such time as the Arbitration is finally concluded.

### IV. CONCLUSION AND ORDER

Based on the foregoing, the Court concludes that Indian Harbor owes S&P a duty to defend in the lawsuit and arbitration filed by Gillette. As a result, it is hereby

**ORDERED** that Indian Harbor's Motion for Summary Judgment [Doc. # 14] is **DENIED** as to the duty to defend. It is further

**ORDERED** that the remaining duty to indemnify issue is **STAYED** and this case is **ADMINISTRATIVELY CLOSED**. Counsel are directed promptly to advise the Court in writing when the Arbitration has been finally concluded and at that time, if appropriate, they shall file a motion seeking reinstatement of this case on the Court's active docket.

SIGNED at Houston, Texas, this **10th** day of **August, 2011**.

Nancy F. Atlas
United States District Judge